```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| PAUL MORIARTY,<br><br>    Plaintiff,<br><br>  v.<br><br>CLASSIC AUTO GROUP, INC.,<br>et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-5222 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

John C. Eastlack, Jr., Esq.
WEIR & PARTNERS LLP
Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
    Attorney for Plaintiff

James Bucci, Esq.
GENOVA BURNS BIANTOMASI WEBSTER LLC
2 Riverside Drive, Suite 502
Camden, NJ 08103
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    Plaintiff Paul Moriarty brings this action alleging that Defendants Ernest Cavello and John La Sala, both employees at a Nissan car dealership in Turnersville, N.J., defamed him when they stated to law enforcement and other individuals that Plaintiff was "smashed" or otherwise intoxicated when he visited

the dealership. As a result of these statements, Plaintiff alleges that the police subjected him to an illegal traffic stop, an unlawful seizure and arrest, and malicious prosecution for driving while intoxicated. The charges against Plaintiff were later dropped.

Before the Court is a partial motion to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) by Defendants Calvello and La Sala, Classic Auto Group, Inc., and Penske Automotive Group, Inc. [Docket Item 11.] Defendants seek dismissal of the defamation claims (Counts I & II), as well as related claims for false light (Count IV) and intentional or negligent infliction of emotional distress (Counts V & VI), against Calvello and La Sala. Defendants also seek dismissal in part of the vicarious liability claim (Count XI) against the corporate Defendants, to the extent that count premises liability on the underlying defamation, false light or emotional distress claims.

For the reasons explained below, the Court finds that the Amended Complaint states a plausible claim for relief, and Defendants' motion will be denied.

**II. BACKGROUND**

The facts of this case are drawn from the Amended Complaint and are accepted as true for the purposes of this motion. On July 31, 2012, Plaintiff Paul Moriarty visited the Turnersville

2

Nissan dealership, operated by Defendant Classic Auto Group, Inc., because the lease on his car was ending. (Am. Compl. [Docket Item 10] at 1-2.) Plaintiff is a New Jersey State Assemblyman and former mayor of the Township of Washington, N.J. (Id. at 3.)

At the dealership, Plaintiff interacted with a few employees, including Calvello and La Sala. (Id. at 4.) Plaintiff alleges that La Sala stated to Calvello, among others, that Plaintiff was "'smashed' and/or otherwise utilized words that described Plaintiff as intoxicated, drunk and/or inebriated by way of alcoholic beverages." (Id. at 5.) La Sala "directed, encouraged or otherwise allowed" Calvello to repeat the assertion to others, and Calvello did so by reporting Plaintiff's intoxication to his cousin, Detective Martin Calvello,[1] of the Washington Township Police Department. (Id. at 6.) Plaintiff also alleges that Calvello and La Sala told police that Plaintiff was acting in a manner that caused Defendants "alarm and discomfort so as to require police involvement." (Id. at 10-11.) Plaintiff asserts that La Sala did not try to deter Plaintiff from driving and did not call a taxi for Plaintiff. (Id. at 5.) Plaintiff alleges that Calvello and La Sala knew their statements were false or were made in reckless disregard

---

[1] Subsequent references to "Calvello" refer to Defendant Ernest Calvello. References to "Det. Calvello" refer to Martin Calvello.

3

of the truth and that Calvello "was aware that his cousin would have to take action as a police office to protect the driving public from the motor vehicle operation of the allegedly drunk Plaintiff Moriarty." (Id. at 3, 5, 7.)

After Plaintiff drove away from the dealership, he was "intercepted" by Officer Joseph DiBuonaventura of the Washington Township Police Department. (Id. at 7.) Plaintiff asserts that he was subject to a "false and illegal stop, seizure, arrest, and issuance of false charges against Plaintiff by a member of the Washington Township, Gloucester County Police Department." (Id. at 14.) He adds that the charges against him were dismissed after Officer DiBuonaventura was indicted by a Gloucester County grand jury for "Official Misconduct, Falsifying Records, and Harassment with regard to the arrest of Plaintiff Moriarty." (Id. at 7.) Plaintiff suggests that the video recording of the pursuit and traffic stop from DiBuonaventura's vehicle dashboard camera contradicts DiBuonaventura's account of the events.[2] (Id.)

On August 1, 2012, Plaintiff returned to the car dealership to meet with La Sala and Peter Kline, the general manager of the "Auto Mall." (Id. at 4.) Plaintiff sought to obtain the private security camera video footage from the day of the incident and

---

[2] Plaintiff has filed a separate lawsuit against Officer DiBuonaventura and the Washington Township Police Department. See Complaint, Moriarty v. DiBuonaventura, No. 14-2492 (D.N.J. Apr. 18, 2014).

4

the name of a fellow customer who had seen Plaintiff at the dealership. (Id.) La Sala advised Plaintiff to seek that material through his attorney. (Id.) Plaintiff overheard La Sala "tell Kline that Mr. Moriarty had been 'professional and normal' while on the business premises on July 31, 2012." (Id.)

    Plaintiff also asserts that La Sala

> supported the candidacy of Tony Celeste, a Service Manager at the Toyota automobile dealership in the Auto Mall operated by Classic, who as a Tea Party Candidate for the Assembly, had previously accused Plaintiff of being part of a "corrupt political machine." During the summer of 2011, Plaintiff Moriarty in a telephone conversation with Peter Kline, the Auto Mall Manager, expressed concern about the circulation of these corruption accusations by employees and staff of the Auto Mall.

(Id. at 2.)

    Approximately seven weeks after the incident, Calvello was interviewed by the Washington Township Police Department. Plaintiff asserts that Calvello "testified" in this interview "that he knew when he made the call to his cousin, Det. Calvello[,] that Plaintiff Moriarty neither smelled of alcohol nor behaved in an intoxicated manner while in his presence." (Id. at 6.) Defendants deny that Calvello ever made such a statement and provide a transcript of the interview. (See Tr. of the Interview of Ernest Calvello on 9/20/12 ("Tr.") (Def. Ex. A [Docket Item 11-1]).) In the interview, Detective Tim Breen asked Calvello about what he told his cousin:

5

>   DET. TIM BREEN: Did you tell Marty Calvello that Mr. Moriarty was drunk or had been drinking?
>
>   MR. ERNEST CALVELLO: Not to my recollection, sir.
>
>   DET. TIM BREEN: Okay. . . . Did Mr. LaSala tell you anything to indicate that?
>
>   MR. ERNEST CALVELLO: Not to my recollection.

(Tr. at 11:9-17.) Calvello explains that he "really didn't have much contact" with Plaintiff at the dealership and that La Sala asked him to call Det. Calvello because Plaintiff had grabbed La Sala in a way that made La Sala uncomfortable. (Tr. at 4:2-15.) Calvello explains that he called his cousin to say that "Mr. Moriarty was here and he made people feel uneasy," and, after Plaintiff left the dealership, Calvello called his cousin again to say, "'Cuz, there's nothing, you know. Everything's okay. He left.'" (Tr. at 13:15-14:2.) Calvello testified that he reported to his cousin that "there was no problems [sic]" after Plaintiff left. (Tr. at 5:13-15, 12:1-2.) In the interview, Calvello never describes Plaintiff as appearing to be intoxicated or smelling of alcohol, although Det. Breen never directly asked Calvello (1) to describe Plaintiff's appearance or conduct, or (2) whether Plaintiff smelled of alcohol.

Plaintiff filed suit in the Superior Court of New Jersey, Gloucester County, and Defendants removed the case to this Court because the Complaint alleged violations of the federal constitution. The Court granted Defendants' previous partial

motion to dismiss without prejudice [Docket Item 5], permitting Plaintiff to file an Amended Complaint with additional factual detail to support his claims. See Moriarty v. Classic Auto Group, Inc., No. 13-5222, 2014 WL 884761 (D.N.J. Mar. 6, 2014), ECF No. 8. Plaintiff timely filed the Amended Complaint, and Defendants now bring this partial motion to dismiss.

**III. STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations that are no more than legal conclusions are not entitled to the same assumption of truth. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity,

7

and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When matters outside the pleading "are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56," and the court must give the parties "a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Crown Cent. Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980). However, the district court may consider a "'document integral to or explicitly relied upon in the complaint,'" or an "'undisputedly authentic document . . . if the plaintiff's claims are based on the document," without converting Rule 12(b)(6) motion into a motion for summary judgment. In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997), and Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) (emphasis in In re Rockefeller Ctr. Props.).

**IV. DISCUSSION**

    **A. Matters outside the pleadings**

At the outset, the Court must address the extrinsic material both Plaintiff and Defendants have provided in support of their positions. For the reasons explained below, the Court will consider the transcript of Calvello's interview with police and exclude the rest of the matters outside the pleading for the purposes of deciding this motion.

Both parties wish to avoid converting this motion to one for summary judgment. (See Pl. Opp'n [Docket Item 14] at 4, 10 (voicing "a desire to avoid the conversion of a Motion to Dismiss on the pleadings to one of summary judgment" and describing in detail the discovery he desires that bears on the Defendants' knowledge of the alleged falsity of their statements); Def. Mot. at 13 (arguing that the Court may consider the extrinsic evidence without converting the motion); Def. Reply [Docket Item 17] at 10-11.) The Court agrees that it is premature to convert this motion to dismiss to a motion for summary judgment. The parties have not yet met for an initial scheduling conference, the parties do not have a discovery plan, and no answer has been filed. Therefore, unless any of the furnished documents are "integral to or explicitly relied upon in the complaint," or "undisputedly authentic document . . . if the plaintiff's claims are based on the document," the Court will exclude the matters outside the pleading. In re Rockefeller Ctr. Props., 184 F.3d at 287.

9


At oral argument, the parties agreed that the transcript of Calvello's interview with the police may be considered without converting the motion because Plaintiff explicitly relies upon Calvello's testimony from that interview in the Amended Complaint. (Am. Compl. at 6.) Neither party has objected to the accuracy or completeness of the transcript. Therefore, the Court will consider the transcript in deciding the present motion.

However, the Court will not consider Plaintiff's documents because they do not fit the criteria for consideration without conversion to a motion for summary judgment. Plaintiff argues that his exhibits, which include police memos and reports, "are being advanced as 'authentic documents' upon which the complaint is based." (Pl. Opp'n at 10.) The reports certainly discuss the facts that are at the core of the Amended Complaint, but the pleadings are not <u>based</u> on the reports. Rather, the pleadings are based on the events of July 31, 2012. Plaintiff's position, if accepted, would permit any party to present to the Court any authentic document that discussed the facts of the underlying action on a motion to dismiss. Rule 12(d) does not contemplate such a broad exception to the general rule that motions to dismiss are to be judged on the face of the pleadings. <u>See</u> <u>In re Campbell Soup Co. Sec. Litig.</u>, 145 F. Supp. 2d 574, 588 n.1 (D.N.J. 2001) (analyzing the narrow exception discussed in <u>Pension Benefit Guar. Corp.</u>, 998 F.2d at 1196). If Plaintiff

10

wished to include factual allegations contained within these documents in his Amended Complaint, he could have done so, or he could seek leave to file a Second Amended Complaint with additional factual assertions drawn from these documents or with the documents attached. The Court will exclude Plaintiff's exhibits for the purposes of this motion.

It also is worth noting which facts in the briefs are <u>not</u> contained in the Amended Complaint, and therefore may not be considered by the Court in analyzing the sufficiency of the pleadings. For instance, Plaintiff, in his opposition brief, states that Officer DiBuonaventura charged Plaintiff with both an improper lane change and driving while intoxicated. (Pl. Opp'n at 8.) Plaintiff states that the dashboard camera showed "no improper driving and performance of a satisfactory field sobriety test." (<u>Id.</u> at 9.) Plaintiff also suggests that he "was sober at the time the report was made to Defendant Calvello's police detective cousin." (<u>Id.</u>) Plaintiff describes a Supplementary Investigation Report by Officer DiBuonaventura, which states that the officer received two telephone calls from Detective Frattali reporting that Plaintiff was inside the dealership drunk and that he was leaving the dealership in a blue car and was "smashed." (<u>Id.</u> at 11-12.) DiBuonaventura reported that he received a call from Det. Calvello who said his cousin had told him that La Sala said that Plaintiff was smashed

11

at the dealership prior to his arrest. (Id. at 12.) The opposition also includes quotations from an internal affairs report from Det. Frattali, further describing that Det. Calvello was told on the phone that Plaintiff was drunk. (Id. at 13.) Plaintiff asserts that a police memo from a lieutenant to the police chief saying that he "didn't smell a thing" on Plaintiff at the "Alcotest" station. (Id. at 13.)

None of these assertions of fact appear in the Amended Complaint, and therefore they may not be used in support of Plaintiff's opposition to the motion to dismiss.

**B. Defamation (Counts I & II)**

In New Jersey, the cause of action of defamation is composed of three elements: "'(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 585 (2009) (quoting DeAngelis v. Hill, 180 N.J. 1, 13 (2004)). Where the allegedly defamatory statement concerns a public figure, as is the case here, New Jersey courts require proof of "actual malice," W.J.A. v. D.A., 210 N.J. 229, 244 (2012) (quoting Senna v. Florimont, 196 N.J. 469, 496-97 (2008)), meaning that the speaker "knew the statement to be false or acted in reckless disregard of its truth or falsity." Durando v. Nutley Sun, 209 N.J. 235, 251

12

(2012). At the pleading stage, a plaintiff alleging defamation with actual malice must plead facts from which malice might reasonably be inferred. See Iqbal, 556 U.S. at 678; Harris v. Zyskowski, No. 12-7191, 2013 WL 6669186, at *6 (D.N.J. Dec. 18, 2013); Mu Sigma, Inc. v. Affine, Inc., No. 12-1323, 2013 WL 3772724, at *4 (D.N.J. July 17, 2013); Earley v. Gatehouse Media Pa. Holdings, Inc., No. 12-1886, 2013 WL 5466149, at *6 (M.D. Pa. Sept. 30, 2013)(citing Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2010)).

Defendants do not argue that the Amended Complaint fails to allege a defamatory statement or unprivileged publication. Defendants only argue that Plaintiff has failed to allege facts that support a finding of actual malice. (Def. Mot. at 7, 10, 11, 15.) Therefore, the key inquiry for the Court is whether Plaintiff has alleged sufficient facts from which it might be reasonably inferred that Defendants La Sala and Calvello knew that their statements about Plaintiff were false or they acted in reckless disregard of their truth or falsity. The Court must construe the Amended Complaint in the light most favorable to Plaintiff and determine if a claim for relief is plausible -- not necessarily probable, but more than merely possible. See Iqbal, 556 U.S. at 678, 696.

Plaintiff has stated a plausible claim for relief. Most significantly, Plaintiff alleges that, on the day after the

13

incident, he heard La Sala tell Peter Kline that Plaintiff "had been 'professional and normal' while on the business premises on July 31, 2012." (Am. Compl. at 4.) Defendant argues that this fact reasonably implies that La Sala was trying "to act with professional courtesy toward the Plaintiff by avoiding further confrontation." (Def. Mot. at 12.) That may prove to be the case. But viewed in the light most favorable to Plaintiff, this fact permits a reasonable inference that La Sala observed Plaintiff to be sober at the dealership and therefore knew that Plaintiff was not drunk when he told Calvello otherwise. Accordingly, Plaintiff has stated a plausible claim for defamation with actual malice.

The transcript of Calvello's interview also supports an inference of actual malice. The Court must accept as true Plaintiff's assertions that Calvello told the police that Plaintiff was intoxicated. (Am. Compl. at 6-7.) Plaintiff contends that Calvello's account of the incident in the police interview flatly contradicts his prior statements that Plaintiff was intoxicated. (Pl. Opp'n at 12.) Plaintiff suggests that Calvello's interview testimony undermines Calvello's credibility and suggests a conscious effort by Calvello to cover-up his allegedly defamatory statements. If, indeed, Calvello had no reason to believe Plaintiff was drunk, as is suggested by his testimony, that fact could support Plaintiff's position because

it renders more plausible the claim that Calvello acted with actual malice. At the same time, a factfinder could conclude that Calvello's inability to recall what he told his cousin and his after-the-fact account of incident is not credible, and that Calvello's testimony to the police was, in fact, an effort to cover up his behavior. Either way, at this stage, the Court must conclude that Plaintiff has stated a plausible claim for relief.

Other factual assertions support an inference that Plaintiff was sober during these interactions on July 31, 2012. Plaintiff asserts that La Sala did nothing to try to stop Plaintiff from driving. He did not call Plaintiff a taxi or question Plaintiff to determine his level of impairment. (Am. Compl. at 5.) Whether La Sala had a legal duty to call a taxi or to prevent Plaintiff from driving, or whether La Sala breached a duty, is irrelevant. A factfinder could conclude that La Sala's inaction is probative of his state of mind. It is some evidence that supports an inference that La Sala knew or suspected Plaintiff was not intoxicated at the time Plaintiff left the dealership. Defendant argues that this inference "is purely speculative; it actually is inconsistent with Plaintiff's other allegation that Defendants did take precaution by calling the police to inform them of their suspicions." (Def. Mot. at 11-12.) Again, Defendants fail to view the fact in the light most favorable to Plaintiff, as the Court must. According to

15

Plaintiff, the reason La Sala did not call a taxi was because he knew Plaintiff was not drunk, and thus his statements and Calvello's call to the police were defamatory, not precautionary. It may yet be shown that La Sala <u>did</u> believe Plaintiff was drunk and encouraged Calvello to call the police, rather than a taxi, or that La Sala was merely negligent in concluding that Plaintiff was drunk. But the Court cannot make such a finding on the pleadings on a motion to dismiss.

A factfinder also could find the circumstances of Plaintiff's arrest to be probative of Plaintiff's sobriety. Although Plaintiff does not explicitly plead that he was not intoxicated, the Amended Complaint as a whole permits that reasonable inference. The asserted facts that (1) Officer DiBuonaventura was indicted for his conduct related to this traffic stop, (2) the charges against Moriarty were dropped because of DiBuonaventura's misconduct, and (3) DiBuonaventura's dashboard video recording contradicts the official police reports and charging documents lend support to the conclusion that Plaintiff was sober at the time of his traffic stop. (Am. Compl. at 7.) If Plaintiff had been sober, it is plausible that La Sala and Calvello knew that fact, and therefore acted with actual malice when they stated otherwise.

Defendants, citing the Court's previous opinion, argue that the police and the county prosecutor were responsible for

16

arresting Plaintiff and dropping the charges, and those decisions have "no bearing on whether Calvello or La Sala knew their statements to be false at the time they communicated them to the police." (Def. Mot. at 15.) Defendants overstate the Court's previous analysis. The Court ruled that the mere facts that (1) Plaintiff was arrested and (2) the charges were dropped shed no light on La Sala's or Calvello's knowledge of Plaintiff's sobriety or intoxication. Moriarty, 2014 WL 884761, at *4. Plaintiff's Amended Complaint, however, does more than state that he was arrested and that the charges were dropped. The Amended Complaint adds facts to explain why he was arrested and why the charges were dropped (alleged misconduct of Officer DiBuonaventura, corroborated by video of the traffic stop), which, when viewed favorably to Plaintiff, suggest that Plaintiff was not intoxicated during the incidents of July 31, 2012. These facts render plausible the allegation that La Sala and Calvello knew Plaintiff was sober when they spoke and therefore acted with actual malice.

    The fact that La Sala supported a different political candidate also is potentially probative of his state of mind. While political disagreement alone does not illuminate what La Sala knew of Plaintiff's sobriety on July 31, 2012, it is a circumstance that potentially explains why La Sala would spread the word that Plaintiff was drunk, if, as alleged, Plaintiff was

17

not. The alleged political motive for La Sala's conduct renders more plausible a claim for defamation.

Taken together, these factual assertions permit a reasonable inference that Plaintiff was sober during his interactions with the car dealership employees and Officer DiBuonaventura, and Defendants observed Plaintiff to be sober. In light of this favorable inference, Plaintiff states a plausible claim for defamation when he alleges that Defendants nonetheless reported that he was intoxicated when he left the dealership behind the wheel of his own vehicle. Therefore, Defendants' motion to dismiss is denied.

**C. Other claims (Counts IV, V, VI & XI)**

Defendants argue that because the false light (Count IV) and emotional distress claims (Counts V & VI) also require a showing of actual malice, see DeAngelis, 180 N.J. at 20, and because Plaintiff does not sufficiently plead actual malice, these other claims must be dismissed, too. (Def. Mot. at 16-17.) Having found that the Amended Complaint sufficiently pleads actual malice, the Court declines to dismiss Plaintiff's false light and emotional distress claims on this basis.

Because the Court declines to dismiss Plaintiff's defamation, false light, and emotional distress claims, the Court will not dismiss Plaintiff's vicarious liability claim, to the extent it is derivative of those torts.

18

**V.   CONCLUSION**

    Because Plaintiff sufficiently pleads actual malice, the Court denies Defendants' motion to dismiss. An accompanying Order will be entered.


 **June 11, 2014**                               **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                              Chief U.S. District Judge